**Robert Downer MOSELEY, Jr., Appellant,**

**v.**

**COMMONWEALTH of Kentucky et al., Appellees.**

Court of Appeals of Kentucky.

March 23, 1973.

Thomas L. Osborne, William E. Scent, Keith, Scent, Kirkham & Walton, Hopkinsville, for appellant.

Mary Jo Arterberry, Dept. of Public Safety, Midway, for appellees.

CATINNA, Commissioner.

This is an appeal from a judgment of the Christian Circuit Court affirming the action of the Commissioner of Public Safety in revoking the driver's license of Robert Downer Moseley, Jr., due to his noncompliance with KRS 186.565.

Moseley was arrested by Officers Darnell and Peace of the Hopkinsville Police Force at about 10:30 p. m. on the night of July 31, 1972, and charged with operating a motor vehicle while under the influence of an alcoholic beverage, they having noticed the erratic driving of Moseley as he proceeded along a public way in Hopkinsville. Moseley admitted to the officers that he had had a few drinks, four cans of beer. Officer Darnell testified that Moseley was unsteady on his feet. He was given the classic finger-to-nose test, which he failed miserably. Officer Darnell testified that he informed Moseley that if he desired to take the chemical breath test he could not smoke, eat, or drink prior to the test. At that time Moseley put out a cigarette he was smoking. However, a few minutes later he lit up another and was again warned that he could not smoke if he wanted to take the test. Upon arrival at the police station, Officer Darnell read to Moseley pertinent portions of the implied consent law (KRS 186.565) and asked Moseley if he wanted to take the test and if he understood the penalty of refusal. After Moseley had stated that he understood the law and his option to refuse to take the test, he immediately went to a "coke machine" and got a Pepsi for himself, one for the young lady who was with him, and also some soda crackers. Again Moseley was warned that smoking, drinking, and eating were not permissible prior to the test. The officer made it clear to Moseley that his option was to take the test or forfeit his license to drive. Craig v. Com., Dept. of Public Safety, Ky., 471 S.W.2d 11 (1971).

As far as the record reveals, the only remark Moseley ever made was to the effect of—what difference does it make now? Officer Peace testified that he and Officer Darnell were with Moseley for more than an hour and fifteen minutes and that during that time he persisted in smoking, drinking, and eating. Officer Darnell testified that upon eight or nine occasions during the evening Moseley was advised of the adverse consequences which would result from his failure to take the test. Finally, Officer Darnell said:

"We could not get any cooperation out of him; he would not quit smoking, he would not quit drinking, he would not quit eating, so I was unable to give him the test."

Officer Darnell filled out an affidavit of refusal to take the chemical test and went off duty at 11:30 p. m. In the meantime, Moseley had called his attorney, Milburn Keith, who arrived prior to Officer Darnell's leaving the building. Darnell said at the time Keith arrived Moseley was still eating and smoking.

Keith secured Moseley's release and left the police headquarters. At about 12:30 a.m. Keith called the police headquarters and told the dispatcher to tell Officer Taylor that Moseley wanted to take the test. Officer Taylor refused to give the test because, as he said, it should have been taken when the officer asked him to take it. He did consent, however, after some argument,

to give Moseley the test "off the record." While the machine used to give the test was warming up, Moseley and his attorney went to the hospital and Moseley had a blood test made and then returned to the police station where the chemical test was given him by Officer Taylor at about 1 a.m. on August 1.

On the basis of the affidavit of refusal, which was filed by Officer Darnell, the acting commissioner of the Department of Public Safety revoked Moseley's license for a period of six months.

Moseley requested and was granted the hearing provided for in KRS 186.565. After the hearing the commissioner issued findings of fact, conclusions of law, and a ruling sustaining the prior revocation of Moseley's operator's license. The action of the commissioner was upheld upon appeal to the Christian Circuit Court.

Moseley seeks reversal of the action of the commissioner and the circuit court upon six grounds.

■ It is first contended that the ruling of the commissioner was arbitrary and capricious in that he did not have a transcript of the hearing at the time of the ruling. The commissioner's findings of fact and ruling were issued on September 8, yet the transcript of the evidence heard was not certified until September 28. The hearing was taken upon a tape-recording device, and there is no evidence that the commissioner did not listen to the tape recording of the hearing, nor is there any showing that the ruling of the commissioner was arbitrary or capricious on the ground that the commissioner did not consider all of the evidence. The findings of fact and ruling of the commissioner are rather detailed, and this court is unable to say from an examination of the record before it that the commissioner neglected to consider the evidence of the hearing.

■ Moseley also complains of the trial court's overruling his motion to take the deposition of William O. Newman, Acting Commissioner, Department of Public Safety. Assuming, without deciding, that such a right of discovery existed it appears that although the motion and affidavit claimed that Newman had failed to read the record of the hearing they did not contain any supporting evidentiary matters. The mere statement of the ultimate conclusion, absent the facts to sustain it, is not a sufficient showing to entitle Moseley to the benefits of the discovery procedure he asserts he is entitled to pursue.

■ Moseley next contends that even though the commissioner may have acted properly and considered all of the record, his actions still remained arbitrary and capricious because the record reflected the fact that Moseley took a blood alcohol and breathalyzer test before the affidavit of refusal was executed by Officer Darnell. Officer Darnell executed the affidavit shortly before he went off duty on the night of July 31, but did not acknowledge it until August 1, the following day. We are of the opinion that the affidavit was sufficient at the time the officer executed it, especially after he had made an effort for some period of time to prevail upon Moseley not to smoke, eat, or drink so that he might be given the test.

■ It is fairly obvious from this record that as soon as Moseley was apprehended he embarked upon a deliberate program designed to frustrate an accurate chemical test. When such a course of action is embarked upon, it is tantamount to an absolute refusal to submit to the test, although there may have been an oral statement that the test would be taken. The case of Newman v. Smith, Ky., 481 S.W.2d 679, decided by this court on June 23, 1972, disposes of the questions raised by Moseley in regard to his consent or refusal to take the test.

The four remaining grounds upon which Moseley seeks reversal test the constitutionality of KRS 186.565. The opinion of

this court in Newman v. Stinson, Ky., 489 S.W.2d 826, decided October 20, 1972, is dispositive of the questions raised in regard to the constitutionality of the act.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.